Mark A. Hutchison (4639)
Scott A. Flinders (6975)
Todd W. Prall (9154)
HUTCHISON & STEFFEN, LLC
Peccole Professional Park
10080 West Alta Drive, Ste. 200
Las Vegas, Nevada 89145
(702) 385-2500

Electronically filed on December 24, 2007

*Attorneys for James A. Altier*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RON HILLMAN, individually,<br><br>Plaintiff,<br><br>v.<br><br>JAMES A. ALTIER, individually, and DOES I through X,<br><br>Defendants. | Case No.:  2:07-cv-00259 (PMP)(PAL)<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| JAMES A. ALTIER, an individual,<br><br>Counter-claimant,<br><br>v.<br><br>RON HILLMAN, an individual; DOES I through V; ROE CORPORATIONS I through V,<br><br>Counter-defendant. | |

Defendant JAMES A. ALTIER, by and through his attorney of record moves the Court for an order granting partial summary judgment with respect plaintiff's claims against defendant on the grounds that (1) all or some of plaintiff's claims are barred by the statute of frauds, (2) all or some plaintiff's claims are barred by the parol evidence rule, (3) all or some of plaintiff's claims are barred by the terms of the agreement between the parties, and (4) all or some of plaintiff's claims are barred by plaintiff's own material breach of the agreement between the parties.

//

//

For the these reasons, defendant requests that the Court grant partial summary judgment in his favor with respect to plaintiff's claims.

DATED this 24th day of December, 2007.

HUTCHISON & STEFFEN, LLC

Mark A. Hutchison (4639)
Scott A. Flinders (6975)
Todd W. Prall (9154)
Peccole Professional Park
10080 West Alta Drive, Ste. 200
Las Vegas, Nevada 89145
(702) 385-2500

Attorneys for Defendant James Altier

## Points and authorities

### 1. Introduction

This lawsuit is a diversity action arising from alleged agreements between plaintiff and defendant (the "Parties") by which plaintiff is claiming a right to the profits resulting from the sale of four properties (the "Properties"). Three of the Properties are located in Maricopa County, Arizona, at 23370 Cocopah Street, Buckeye, Arizona, APN # 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 (the Cocopah Property"); 24118 West Lasso Lane, Buckeye, Arizona, APN # 504-60-694, and 24130 West Lasso Lane, Buckeye, Arizona, APN # 504-58-692 (the "Lasso Lane Properties"); and one of the Properties is located in Nevada at 1244 Maple Pines Avenue, North Las Vegas, Nevada, APN # 124-26-110-058 (the "Maple Pines Property").

In his complaint, plaintiff alleges that the Parties had a joint venture agreement with respect to each of the properties set forth above, wherein defendant would purchase and hold title to each property, plaintiff would manage and locate tenants for the properties, the properties would be held for at least two years at which time the properties could be sold and the proceeds from the sale of the properties would be split equally between the Parties after all costs for holding the properties were paid.[1]

Plaintiff based his action primarily on an alleged joint venture agreement.[2] The only written agreement, however, produced during discovery was a Joint Venture Agreement entered into on May 26, 2005 between the Parties (the "Agreement").[3] Although the Agreement clearly states that the it is applicable to the Cocopah Property, plaintiff is seeking to overextend application of the Agreement to additional properties that are not listed in the Agreement and to which the Agreement cannot apply pursuant to its terms. Plaintiff's claims against both the Maple Pines Property and the Lasso Lane Properties are barred by the statute of frauds, the parol evidence rule, and the terms of the Agreement barring any amendments unless they are in

---

[1] *See* Complaint, ¶¶ 7-8.

[2] *Id.* ¶ 4.

[3] *See* Exhibit B.

a writing executed by the Parties. Further, to the extent the written agreement between the parties does apply to the Lasso Lane Properties, plaintiff failed to fulfill the terms of the very agreement he relies upon with respect to those properties, and his claims therefore are barred.

Finally, with respect to the Cocopah Property, plaintiff has breached the agreement and cannot recover under the Agreement. Plaintiff has failed to properly manage the Cocopah Property by (1) failing to conduct criminal background checks and credit checks on potential tenants of the Cocopah Property, (2) failing to inform the tenants of the Codes Covenants and Restrictions ("CCRs") for the Cocopah Property, (3) failing to ensure that tenants were following the CCRs, (4) failing to collect the Homeowner Association fines that were assessed against the Cocopah Property for CCR violations, (5) failing to keep the Cocopah Property in repair, (6) failing to remit rent payments to defendant within the time required by the Agreement, and (7) failing to properly manage tenants by ensuring that they are paying rent and that they are not damaging the property.

The Court should grant summary judgment in favor of defendant with respect to each of plaintiff's claims. Defendant also seeks his attorneys fees and costs for having to defend this suit pursuant to agreed upon the terms of the Agreement.

## 1. Statement of undisputed facts

### A. The Agreement and the Cocopah Property.

The Parties entered into the Agreement on or about May 26, 2005 in Las Vegas, wherein the parties agreed to split the proceeds after purchasing and selling the Cocopah Property.[4] Defendant purchased the Cocopah Property in or about February 2, 2006 and the Agreement,[5] which was intended to be a fully integrated written agreement, finalized the understanding between the Parties regarding the Cocopah Property.[6]

---

[4] *See* Affidavit of James A Altier ¶ 3, attached as Exhibit A; Agreement, attached as Exhibit B.

[5] *See* Cocopah Property HUD Statement, attached as Exhibit C.

[6] *See* Agreement, Sec. 21 (noting that the Agreement "constitutes the entire agreement of the parties and supersedes all prior agreements, understandings, written, or oral"); *see also*

The Agreement states:

> The limited purpose of this Joint Venture is the purchasing, leasing, and selling residential real properties in Arizona in one or more of the subdivisions. No partnership or joint venture is intended for any other purpose. The specific lots to be purchased leased and sold are indicated below:
>
> 23370 Cocopah Street Buckeye AZ, 85326 (Lot 167).[7]

The Agreement does not list any other properties. However, the Agreement does contemplate the potential for the application of the Agreement to other properties. The Agreements states

> RON HILLMAN will be responsible for reimbursing JIM ALTIER within 6 (six) months of the closing of 23370 West Cocopah Street Buckeye AZ, 85326 (Lot 167) and within 1 (one) month of the closing of any other property, 50% (fifty percent) of the amount required as a down payment to acquire any such property per the various purchase agreements that will be entered into by and between JIM ALTIER and given home builder. RON HILLMAN will also provide 50% of the amounts required for closing costs, unless the latter are included in the financing.[8]

The Agreement further states:

> This Contract constitutes the entire agreement of the parties and supersedes all prior agreements and understandings, written or oral. This Agreement may be amended only in writing executed by the parties hereto.[9]

The Agreement also states that it "shall be subject to and construed in accordance with the laws of the State of Nevada"[10] and that the "prevailing party in any suit instituted arising out of this Contract . . . shall be entitled to receive reasonable attorneys' fees and costs incurred in such suit or proceedings."[11]

The Agreement also required that any property to which the Agreement applies must be held by defendant for two years before it could be sold, at which time the properties could be sold and the proceeds would be allocated to the Parties, first to each party pursuant to the

---

Deposition of Ron Hillman, p. 31 (noting that he agreed to everything in the Agreement), attached as Exhibit J.

[7] Agreement, Sec. 1.

[8] *Id.* Sec. 3(A).

[9] *Id.* Sec. 21.

[10] *Id.* Sec. 19.

[11] *Id.* Sec. 15.

5

expenses they incurred in carrying the property, and the remaining profit split evenly between the Parties.[12]

Defendant paid the down payment and all closing costs at the time of closing on the Cocopah Property and sent plaintiff notice of his duty to pay half of the closing costs on or about February 24, 2005.[13] Plaintiff paid his half of the down payment and closing costs on the Cocopah Property pursuant to the terms of the Agreement.[14]

**B.    The Lasso Lane Properties**

On or about August 30, 2005, defendant closed on both of the Lasso Lane Properties, which are also located in Maricopa County, Arizona.[15] Defendant paid down payments and closing costs of $11,429.42 on the Lasso Lane Property at 24130 West, and $12,642.93 on the Lasso Lane Property at 24118 West.[16] Defendant notified plaintiff of the purchase of the Lasso Lane Properties and requested reimbursement of half of the down payments and closing costs for the purchase of the properties pursuant to the Agreement.[17] On September 29, 2005, defendant sent a facsimile and again notified Plaintiff that the thirty day period within which he was required to pay his half of the down payments and closing costs for the Lasso Lane Properties expired on September 30, 2005 and requested that he make the required payments immediately pursuant to the Agreement.[18] Plaintiff refused to reimburse his half of the down

---

[12] *Id.* Secs. 8-9.

[13] *See* Affidavit of James Altier, ¶ 4; Facsimile with Cocopah Property HUD Statement attached, attached as Exhibit D.

[14] *See* Deposition of Ron Hillman, pp. 28-29, 38.

[15] *See* Affidavit of James Altier, ¶ 6; HUD Statements for the Lasso Lane Properties, attached as Exhibit E.

[16] *See* Affidavit of James Altier, ¶ 6; HUD Statements for the Lasso Lane Properties.

[17] *See* Affidavit of James Altier, ¶ 7.

[18] *Id.* ¶ 8; *see* Facsimile from Jim Altier to Ron Hillman dated September 29, 2007 attached as Exhibit F.

payments and closing costs pursuant to the Agreement.[19] Plaintiff has never paid his one-half of the down payment and closing costs for the Lasso Lane Properties in accordance with the terms of the Agreement.[20] Indeed, plaintiff has consistently insisted, without providing any additional written agreement, that plaintiff and defendant entered into a *new* deal wherein defendant would pay plaintiff $20,000.00 for each of the Lasso Lane Properties.[21] Despite numerous requests, plaintiff has not produced any documents that would show that defendant agreed to amend the Agreement. These alleged documents do not exist. Nevertheless, the Agreement still required plaintiff to pay 50% of the down payment and closing costs on any additional properties, which would include the Lasso Lane Properties. Plaintiff never complied with the Agreement.

### C.  The Maple Pines Property.

In 2004, prior to any written agreement between the Parties and prior to the purchase of the Cocopah Property, defendant located and purchased the Maple Pines Property independently of plaintiff.[22] Defendant closed on the Nevada Property on June 28, 2004.[23] Defendant never entered into any agreement or joint venture with plaintiff with respect to the Nevada Property.[24] Indeed, defendant did all of the management, leasing, and any other work related to the Maple Pines Property.[25] Plaintiff has not and cannot produce any evidence to the contrary.

//

---

[19] *See* Deposition of Ron Hillman, pp. 43-44; Affidavit of James Altier, ¶ 9.

[20] Deposition of Ron Hillman, pp. 43-44.

[21] *Id.*

[22] *See* Affidavit of James Altier, ¶ 11.

[23] *Id.*; *see* Maple Pines Property HUD Statement, attached as Exhibit G.

[24] *See* Affidavit of James Altier, ¶ 11.

[25] *Id.* ¶ 12; *see* documents relating to the management of the Maples Pines Property, attached as Exhibit H; Affidavit of Winnie Smith, attached as Exhibit K.

### D.  Management of the Cocopah Property.

As concerns the Cocopah Property, for which a written agreement does exist, plaintiff failed to fulfill his duties with respect to managing the Cocopah Property. Defendant gave plaintiff notice that he was terminating the Agreement because of plaintiff's material breach of the Agreement on March 23, 2006, more than a year ago.[26] Defendant's basis for the termination was plaintiff's material breach of the Agreement by, among other things, (1) failing to properly research potential tenants, (2) failing to properly inform tenants of the covenants, restrictions, and rules for the property and ensure that the tenants abide by them, (3) failing to collect homeowner association fines and fees that were be assessed against the tenants, (4) failing to timely remit rental payments to defendant as required under the Agreement, (5) failing to collect rent on time or even at all, (6) failing to ensure that tenants did not damage the property, and (7) failing to keep the property in good repair.[27]

Plaintiff never responded to defendant's written notice dated March 23, 2006, and did not perform any more management or other duties with respect to the Cocopah Property after that date. Plaintiff's failures completely frustrated defendant's purpose for entering into the Agreement, which was to secure a manager who would properly locate quality tenants and care for the property in exchange for an interest in the proceeds from the sale of the property.[28] Indeed, after terminating the Agreement, defendant discovered that plaintiff had allowed the current tenants to remain on the Cocopah Property without paying rent for a significant period of time.[29] Defendant was eventually required to evict the tenants himself.[30]

//

---

[26] *See* Affidavit of James Altier, ¶ 14; *see* Letter dated March 23, 2006, attached as Exhibit I.

[27] *See* Affidavit of James Altier, ¶ 13.

[28] *Id.* ¶ 14.

[29] *Id.* ¶ 13.

[30] *Id.*

## 2. Legal Argument

### A. Standard for Motion for Summary Judgment

"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[31] An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law.[32] The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.[33]

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact.[34] Once the moving party satisfies the requirements of FRCP 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."[35] The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists,"[36] and "must do more than simply show that there is some

---

[31] *Kindinger v. Boulder Station, Inc.*, 2007 WL 17962247 (D. Nev. June 19, 2007); *see* FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[32] *Anderson v. Liberty Lobby, Inc.*, 577 U.S. 242, 248-49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[33] *Mason v. Artwork Pictures, LLC*, 2007 WL 1100826 (D. Nev. April 12, 2007); *see Anderson*, 477 U.S. at 252.

[34] *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) *cert. denied*, 460 U.S. 1085 (1982); *see Celotex*, 477 U.S. at 323.

[35] *Anderson*, 477 U.S. at 256; *see* FRCP 56(e); *Celotex*, 477 U.S. at 325; *Matsushita*, 475 U.S. at 587.

[36] *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

metaphysical doubt as to the material facts."[37] Although all justifiable inferences must be viewed in the light most favorable to the nonmoving party,[38] the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but must produce specific facts, by affidavit or other evidentiary materials as provided by FRCP 56(e), showing there is a genuine issue for trial.[39] The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.[40] Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy."[41] "Uncorroborated and self serving" testimony without more, will not create a "genuine issue" of material fact precluding summary judgment.[42]

Here, plaintiff cannot show that there is any issue of material fact that would preclude summary judgment in favor of defendant with respect to plaintiff's claims. Plaintiff's only evidence is his own uncorroborated testimony of oral agreements or understandings that are not supported by any of the documents or other evidence produced in this case and are barred either by the statute of limitations, the parol evidence rule, or the terms of the Agreement itself. With respect to the Cocopah Property, the facts clearly show that plaintiff failed to fulfill his part of the Agreement and that defendant was justified in terminating the Agreement in March of 2006.

//

//

---

[37] *Matsushita*, 475 U.S. at 586.

[38] *See Matsushita*, 475 U.S. at 587.

[39] *See Anderson*, 477 U.S. at 256.

[40] *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1986) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).

[41] *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986).

[42] *Villiarmo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

**B.    Plaintiff's quiet title claim is not supported by the Agreement or the evidence.**

When determining real property rights, including actions for quiet title, federal courts generally look to state law.[43] As an action brought under state substantive law, state law governs the quiet title action. In Nevada, a quiet title action may be brought by any person against another "who claims an estate or interest in real property."[44] An essential part of a complaint brought under NRS 40.010 is that it must show that the defendant claims an interest in the property adverse to the plaintiff.[45]

Plaintiff's action does not assert a right to title to any of the properties that is adverse to the owner of the properties. First, defendant does not have title to any of the properties, but rather these properties are now held by JLA Management Group, LLC ("JLA"). Plaintiff has not even named JLA as a party to this case and is therefore not asserting a claim to the properties adverse to JLA. Second, the Agreement upon which plaintiff's entire complaint is predicated only asserts a right to a percentage of the profits or proceeds generated as a result of the sale of the properties and not to any right to title itself.[46] Despite this fact, plaintiff's quiet title action asserts that by virtue of his agreements with defendant, plaintiff is entitled to have title to the properties in his name. The Agreement, however, does not contemplate any such right and summary judgment should be granted in favor of defendant with respect to plaintiff's quite title action.

**C.    Summary judgment in favor of defendant is proper with respect to the Maple Pines Property because any allegations of an agreement are barred by the statute of frauds and the parol evidence rule.**

*(1)    Plaintiff's allegations with respect to the Maple Pines Property are barred by the statute of frauds.*

Federal courts have generally held that the statute of frauds, while similar to a rule of

---

[43] *See U.S. v. Brosnan*, 363 U.S. 237, 241 (1960).

[44] NRS 40.010.

[45] *See Clay v. Scheeline Banking & Trust Co.*, 40 Nev. 9, 159 P. 1081 (1916).

[46] *See* Agreement, Sec. 9.

11

evidence, is a substantive rule of state law.[47] NRS 111.220 states that "every agreement that, by its terms, is not to be performed within 1 year from the making thereof" is void "unless that agreement, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the person charged therewith."[48]

Here, plaintiff alleges that defendant was to hold onto the Maple Pines Property for two years before selling, as required by the written Agreement. However, no written agreement signed by the parties exists for the Maple Pines Property. Indeed, plaintiff acknowledges that, at best, there was only an oral agreement between the Parties.[49] Defendant denies that there was ever an agreement between the parties.[50]

Although plaintiff asserts an action for promissory estoppel, estoppel or "part performance" can only "take [an] oral agreement out of the statute of frauds" where the "part performance" is "proved by some extraordinary measure or quantum of evidence." *Zunino v. Paramore*, 83 Nev. 506, 509, 435 P.2d 196, 197 (1967). Plaintiff has not provided and cannot provide such an extraordinary measure of evidence to prove that he partly performed any alleged oral agreements with respect to the Maple Pines Property. Plaintiff has not provided any evidence that he contributed any money to the purchase or maintenance of the Maple Pines Property nor has he provided any evidence that he performed any management functions with respect to the Maple Pines Property outside of his own self-serving testimony.[51] Plaintiff did

---

[47] *See, e.g., Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006) (noting that "it is well recognized that Congress did not intend the procedural rules to preempt the so-called substantive state rules of evidence, such as the parol evidence rule, the collateral source rule, or the statute of frauds; although the application of these rules will affect the admissibility of some evidence, they in reality serve substantive state policies regulating private transactions").

[48] NRS 111.220.

[49] *See* Deposition of Ron Hillman, p. 36.

[50] *See* Affidavit of James Altier, ¶ 11.

[51] *See Villiarmo*, 281 F.3d at 1061 ("[U]ncorroborated and self serving testimony, without more, will not create a 'genuine issue' of material fact precluding summary

12

not perform, and was not required to perform any managerial duties with respect to the Maple Pines Property.[52] Indeed, the tenant who resided in the home will testify that plaintiff told her that he had nothing to do with the property and that she would have to work out a lease with defendant.[53]

Although plaintiff alleges claims other than breach of contract, each of the claims are based upon the existence of an enforceable agreement with respect to the Maple Pines Property.[54] The statute of frauds, therefore, bars plaintiff's claims with respect to the Maple Pines Property.

### (2) The parol evidence rule bars plaintiff's claims with respect to the Maple Pines Property.

Federal courts have referred to state law when applying rules for contract interpretation such as the parol evidence rule because it is a "substantive rule that applies in equity as well as at law."[55] Under Nevada law, "parol, or extrinsic, evidence 'is not admissible to add to, subtract from, vary, or contradict ... written instruments which ... are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake.'"[56] Further, the parol evidence rule "provides that prior negotiations and agreements merge in the written contract, and parol evidence is not admissible to vary or contradict the written agreement's

---

judgment.").

[52] *See* Affidavit of James Altier, ¶¶ 11-12.

[53] *See* Affidavit of Winnie Smith.

[54] Plaintiff's only other claim is a breach of fiduciary duty claim. However that claim is based solely on plaintiff's alleged interest in the properties, which allegedly arises from the Agreement. *See* Complaint.

[55] *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1191 (D. Nev. 2006) (citing *State ex rel. List v. Courtesy Motors*, 95 Nev. 103, 590 P.2d 163, 165 (1979).

[56] *Id.* (quoting *Ringle v. Bruton*, 120 Nev. 82, 86 P.3d 1032, 1037-38 (2004)).

13

terms."[57]

Here, defendant purchased the Maple Pines Property on June 28, 2004. The Parties entered into the Agreement on or about May 26, 2005 in which the parties agreed that the Agreement "constitutes the entire agreement of the parties and supersedes all prior agreements and understandings, written or oral."[58] Despite the fact that Mr. Hillman had full knowledge of the purchase of the Maple Pines Property prior to executing the Agreement,[59] neither party elected to list the property within the Agreement.[60] The Agreement specifically states that it "constitutes the entire agreement of the parties and supersedes all prior agreements and understandings, written or oral."[61] Plaintiff's claim to the Maple Pines Property is therefore barred by the parol evidence rule.

**D.   Summary judgment in favor of defendant is proper with respect to the Lasso Lane Properties.**

Similar to the Maple Pines Property, the Lasso Lane Properties were not listed specifically in the terms of the Agreement and any oral agreement with respect to these properties is barred by the statute of frauds.[62] Plaintiff has not produced any other writing that would satisfy the statute of frauds with respect to the Lasso Lane Properties.

---

[57] *Id.* (citing *Tallman v. First Nat'l Bank of Nev.*, 66 Nev. 248, 208 P.2d 302, 306 (1949)).

[58] Agreement, Sec. 21.

[59] *See* Deposition of Ron Hillman, p. 14.

[60] The Agreement specifically stated the properties to which it applied and only listed the Cocopah Property. *See* Agreement, Sec. 1.

[61] Agreement, Sec. 21. Plaintiff states in his deposition without any corroborating evidence that the Agreement was entered into after all of the properties were purchased. *See* Deposition of Ron Hillman, pp. 14-15. The facts set forth before the Court clearly rebut this allegation and, without more, plaintiff cannot argue that this is a disputed fact. However, even if it were true, plaintiff's claims against the Lasso Lane Properties would then be barred by the parol evidence rule because the Parties did not include either property in the written agreement. *See infra* Part 2.C.2.

[62] *See infra* Part 2.C.1.

14

Further, even if the Lasso Lane Properties were considered "any other" property under Section 3(A) of the Agreement, a condition of including any other properties in Arizona within the terms of the Agreement was that plaintiff would pay 50% of the down payment and closing costs within one month of closing.[63] Not only did plaintiff fail to pay the required 50% of the down payments and closing costs for the Lasso Lane Properties, he has continued to refuse to do so.[64] To this day, plaintiff continues to insist, in direct contradiction to the terms of the Agreement, that he should not have been required to pay any of the closing costs or down payment on the Lasso Lane Properties.[65] Plaintiff's refusal to pay his portion of the down payment and closing costs for the Lasso Lane Properties precludes him from enforcing the Agreement with respect to the Lasso Lane Properties. Plaintiff's claims with respect to the Lasso Lane Properties fail because plaintiff failed to meet the conditions for subjecting the Lasso Lane Properties to the terms of the Agreement.

Plaintiff has stated that the Agreement was amended with respect to the Lasso Lane Properties to require defendant to pay $20,000.00 for each of the Lasso Lane Properties.[66] However, plaintiff has failed to produce any writing executed by defendant to corroborate his claim. The Agreement makes it clear that any amendments to the agreement must be "in writing executed by the parties."[67] Plaintiff failed to meet the conditions of the Agreement with respect to the Lasso Lanes Properties and therefore plaintiff's claims to an interest in the proceeds of these properties after they are sold is without merit.[68]

---

[63] *See* Agreement, Sec. 3(A).

[64] *See* Deposition of Ron Hillman, pp. 43-44.

[65] *Id.*

[66] *Id.*

[67] Agreement, Sec. 21.

[68] As with the Maple Pines Property, any of the other claims in the complaint are based on there being an agreement between the parties for relating to each property. If there is no enforceable agreement, the other claims should also be dismissed.

E. **Plaintiff's claims as they concern the Cocopah Property fails because plaintiff materially breached the Agreement and the Agreement was properly terminated.**

Plaintiff's failure to perform under the Agreement with respect to the Cocopah Property is a material breach of the Agreement which bars plaintiff's claims for recovery. Under Nevada law, a party to a contract may "in response to a material breach on the part of the other party or for other valid reasons, unilaterally cancel the contract."[69] Under the restatement, the Court considers several factors in determining a breach is material.

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[70]

Here, plaintiff's actions constitutes a material breach of the Agreement. Plaintiff failed to perform his obligations and duties under the Agreement in every aspect anc completely frustrated defendant's expectations and purposes for entering into the Agreement.[71] Defendant's expectations under the contract were completely frustrated by plaintiff's failure to perform to the point that plaintiff had not choice but to terminate the Agreement.[72] Plaintiff (1) failed to properly research potential tenants, (2) failed to properly inform tenants of the covenants, restrictions, and rules for the property and ensure that the tenants abide by them, (3) failed to collect homeowner association fines and fees that were assessed to the tenants, (4)

---

[69] *Great American Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 354, 934 P.2d 257, 262 n. 6 (1997).

[70] Restatement (Second) of Contracts, § 241.

[71] *See* Affidavit of James Altier, ¶ 14.

[72] *Id.*

16

failed to timely remit rental payments to defendant as required under the Agreement, (5) failed to collect rent on time or even at all, (6) failed to ensure that tenants did not damage the property, and (7) failed to keep the property in good repair.[73] Plaintiff never responded to that notice and did not perform any more management or other duties with respect to the Cocopah Property under the Agreement after that date. After terminating the Agreement, defendant was required to perform all of the duties that should have been performed by plaintiff. Defendant discovered that plaintiff had allowed the current tenants to remain on the Cocopah Property without paying rent for a significant period of time.[74] Defendant was eventually required to evict those tenants himself.[75]

### 3. Conclusion

The undisputed facts clearly show that defendant is entitled to judgment as a matter of law on all of plaintiff's claims against defendant. Plaintiff's claims against defendant for an interest in the Maple Pines Property and the Lasso Lane Properties is barred by the statute of frauds, the parol evidence rule, and by plaintiff's failure to meet the conditions of the Agreement for those properties. Plaintiff's claims for an interest in the Cocopah Property is barred by plaintiff's material breach of the Agreement. Plaintiff cannot recover on any of his claims.

//
//
//
//
//
//
//

---

[73] *Id.* ¶ 13.

[74] *Id.*

[75] *Id.*

Defendant also requests attorneys fees pursuant to the terms of the written Agreement. The Court should grant partial summary judgment in favor of defendant on all of plaintiff's claims.

DATED this 24th day of December, 2007.

HUTCHISON & STEFFEN, LLC

*/s/ Todd W. Prall*
Mark A. Hutchison (4639)
Scott A. Flinders (6975)
Todd W. Prall (9154)
Peccole Professional Park
10080 West Alta Drive, Ste. 200
Las Vegas, Nevada 89145
(702) 385-2500

Attorneys for Defendant James Altier